UNITED STATES DISTIRCT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MATTHEW KALIL,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>HALEY KALIL,<br><br>　　　　　Defendant. | Case No. 0:26-cv-00062<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

#2055849v1

Plaintiff Matthew Kalil, by and through its undersigned counsel, hereby files its Complaint and avers and states as follows:

## INTRODUCTION

1. Following several seasons playing professional football, Plaintiff Matt Kalil retired in 2019 and quickly and quietly receded from the public eye to focus on business ventures and his family. Defendant Haley Kalil, his former wife, pursued a different path, and since their divorce in 2022, has sought fame and fortune through various social media platforms as an entertainer, where she has millions of followers.

2. These two very different paths collided in November 2025, when Defendant subjected Plaintiff to widespread ridicule, unwanted attention, and invasive commentary by revealing intimate and private details about him on a public livestream. These private details included the size of his genitalia, which she claimed would leave her "in tears" after sexual intercourse and was a primary factor in the parties' divorce.

3. Defendant also broadcast to the world that the couple engaged in medical and therapeutic intervention related to Plaintiff's genitalia and that the parties' sexual relationship was "unhealthy" due to Plaintiff's anatomy. Defendant shared these sensitive personal details about Plaintiff as entertainment for viewers and for her own financial gain even though Plaintiff reasonably expected they would remain private. Defendant's conduct has caused substantial harm to Plaintiff, his family, and his business.

4. Defendant's choice to discuss such personal matters that were of no legitimate public concern was extreme, outrageous, and beyond all possible bounds of decency.

Defendant acted intentionally or with reckless disregard as to the likelihood that her disclosures would cause Plaintiff severe emotional harm, humiliation, and embarrassment. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including severe emotional distress, humiliation, reputational damage, and mental anguish.

5.  Simply put, Defendant chose to publicize sensitive personal details about Plaintiff, regardless of the harm to him and his family, to gain more views and grow her celebrity status.

## THE PARTIES

6.  At all times relevant to this complaint, Plaintiff Matthew Kalil is a citizen of California. He is a former member of the Minnesota Vikings football team. He is Defendant's ex-husband.

7.  Defendant Haley Kalil was born Haley O'Brien in Excelsior, Minnesota and, at all relevant times to this complaint, is a citizen of New York. She attended St. Cloud State University in St. Cloud, Minnesota. As a former pageant contestant, she is a former Miss Minnesota Teen USA 2010, Miss Minnesota USA 2014, and contestant and judge in Miss USA contest. She is currently a model, entertainer, actress and social media influencer. She is Plaintiff's ex-wife.

## JURISDICTION AND VENUE

8.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because

there is complete diversity of citizenship between Plaintiff, a citizen of California, and Defendant, a citizen of New York, and the amount in controversy exceeds $75,000.

9. This Court has personal jurisdiction over Defendant pursuant to Minnesota's long-arm statute, M.S.A. 543.19, as the Defendant committed the alleged acts and statements in Minnesota that caused Plaintiff's injuries.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## GENERAL ALLEGATIONS

11. While Plaintiff Matthew Kalil played for the Minnesota Vikings, he met and married Defendant in 2015.

12. In 2017, Defendant took part in the Sports Illustrated Swim Search competition, and in 2018 she and another model were selected as winners. Defendant appeared in the Sports Illustrated Swimsuit Issue in 2019, 2020, and 2021.

13. After five seasons with the Vikings, and later stints with the Carolina Panthers and Houston Texans, Plaintiff ultimately retired in 2019.

14. Following his retirement, Plaintiff quickly and quietly receded from the public eye. He focused on investing in private business ventures.

15. On May 4, 2022, Defendant filed for divorce from Plaintiff. The divorce was finalized later that year.

16. Plaintiff later remarried in 2024 in a small private ceremony. He and his new wife have a young child. Matthew Kalil has remained a private citizen without seeking public

attention.

17. Following the divorce, Defendant's celebrity status increased, as she flourished as a social media influencer and entertainer. Defendant intentionally sought the public attention.

18. Defendant was nominated for a 2023 Streamy Award for her collaboration with movie star Jared Leto in a comedy sketch and has collaborated with other stars such as the Jonas Brothers, Courtney Cox and Ed Sheeran. She has partnered with or endorsed various brand name products, including Armani Beauty, Valentino Beauty, CeraVe and Hugo Boss, among others.

19. In addition to branching out as a television and movie actress, she has cultivated a massive following of millions of people on various social media platforms. Her screen name on is @haleyybaylee.




20. As of the filing of this Complaint, Defendant's social media audience includes:

- 15.9 million followers, with 2.2 billion "likes" on TikTok;
- 9.3 million followers on Instagram;
- 8.07 million subscribers on Youtube.com;
- 1.6 million followers on Snapchat
- 1.3 million followers on Threads

21. Defendant's social media reach, celebrity and influence is broad. For example, on May 6, 2024, Defendant was a pre-Met Gala host for E! News.

22. In July 2025, Defendant was named to Time Magazine's inaugural list of Top 100 Creators 2025. Time noted that "her influence continues to grow" and that she has secured major brand deals and red-carpet hosting gigs, including this year's Tony Awards and last year's Academy Awards.

23. In October 2025, Defendant was announced as a speaker at the 2025 Creator Marketing Summit, an event featuring top marketers, brand leaders and macro creators in North America. The event was hosted by #paid, a leading creator-marketing platform that generated campaigns for top brand names, and YouTube.

24. Defendant collaborates with other online content creators. Such collaboration is a means to grow an audience and extend content reach beyond usual viewers.

25. In November 2025, Plaintiff collaborated with another popular streamer, Marlon Lundgren Garcia, known by his screen name as @marlon3lg, for a Twitch livestream. Garcia

has a large audience, including 766,000 subscribers on YouTube, 1.5 million followers on Twitch, over 3.7 million followers on Instagram, and 4.6 million followers on TikTok.

26. Garcia had been advertising his "Mar-Athon," a streaming challenge in which he visited all 50 U.S. states in 28 dates. Garcia posted and streamed a variety of online content during this challenge, including collaborations with other online content creators.

27. Garcia specifically made hours of content with the Defendant all in the state of Minnesota, reaching millions of people online.




28. On November 4, 2025, Garcia broadcast a public livestream on Twitch from Minnesota, and interviewed Defendant. Defendant publicly disclosed highly intimate and private facts about Plaintiff's sexual life.

6

#2055849v1

29. The video can now be found publicly on YouTube, on Garcia's profile, titled "I opened up to Haylee Baylee" (https://www.youtube.com/watch?v=JiFXnE043hI). Defendant has a discussion with Garcia in the livestream from approximately 34:00 to 46:00.

30. While Defendant attempted to speak subtly and indirectly during portions of the livestream, including typing a message to Garcia on her phone at one point, the context made the implication unmistakable. Viewers could and did readily infer that she was referring to Plaintiff's genitalia and their private sexual relationship during their marriage, as demonstrated by numerous comments in the live chat that ran during the discussion in the lower right-hand corner.



31. Defendant implied that the size of Plaintiff's genitalia was a primary factor in the parties' divorce and claimed that sexual intercourse with Plaintiff would leave her "in tears."

32. Viewers in the livestream chat actively speculated about the message Defendant

7

typed on her phone during the segment, with many concluding that the message contained the alleged reason for the divorce related to Plaintiff's anatomy.

33. Defendant also claimed that the couple engaged in medical and therapeutic intervention.

> "We tried it all: therapist, doctors. Not even lying... Looked up lipo-type siit," she said. "That's why it's kinda funny. It's like my life is a comedy and it writes itself."

34. Defendant claimed on the livestream that the parties' sexual relationship was "unhealthy" due to Plaintiff's anatomy, presenting private marital information as entertainment for viewers.

> "That was the biggest factor... Because he's like .01% of the population. We tried everything, impossible — unless you're going to be in tears," the 33-year-old model said.

35. Defendant described their sex life as "painful," "impossible," and "the real reason" for the divorce, attributing the end of the marriage to intimate physical details about Plaintiff.

36. Defendant joked with Garcia about Plaintiff's genitalia, encouraging laughter and comments from the livestream audience at Plaintiff's expense. She also made a gesture with her arm for the viewers to see, as well.

37. At one point during the livestream, Defendant described the issue as "two coke cans, maybe even a third," plainly alluding to the alleged size of Plaintiff's genitalia, allowing the viewers to know exactly what Garcia and Defendant were alluding to.

38. Defendant repeatedly emphasized the size of Plaintiff's genitalia throughout the

8

segment, making it a focal point of the discussion despite its deeply private nature.

39.     Defendant portrayed Plaintiff's private physical characteristics as a spectacle, inviting audience reactions, comments, and jokes directed at Plaintiff's intimate life.

40.     These statements involved deeply personal, sensitive information that Plaintiff reasonably expected would remain private and confidential.

41.     Following the livestream's publication, numerous national and international media outlets reported on Defendant's statements, dramatically expanding the reach and impact of the disclosure.



9

#2055849v1

42. Major outlets, including Fox News, TMZ, LADBible, and others, published articles repeating Defendant's allegations in detail, bringing additional attention and humiliation to Plaintiff.

43. The news coverage focused almost exclusively on Defendant's comments about Plaintiff and did not discuss Garcia or the context of the livestream, thereby amplifying the invasion of Plaintiff's privacy.

44. As a result of this extensive media coverage, Defendant's statements have reached millions of viewers and readers across multiple platforms.

45. Defendant's disclosures were not matters of legitimate public concern and served only to sensationalize Plaintiff's private life for entertainment and publicity.

46. The widespread publication of these intimate details has subjected Plaintiff to ridicule, unwanted attention, and invasive commentary from the public.



47. Defendant's conduct has also caused substantial harm to Plaintiff's family, who have been forced to endure the ongoing public circulation of these degrading and deeply personal statements.



48.   The broad and continuing publicity generated by Defendant's statements has interfered with Plaintiff's personal and professional life and caused lasting damage to his dignity, peace of mind and enjoyment of life.

49.   For instance, Plaintiff and his wife began receiving numerous harassing and threatening direct messages and comments on Plaintiff's business Instagram account and on his wife's personal Instagram account.

50.   These messages directly referenced the subject matter discussed by Defendant and have become increasingly frequent, disturbing, and alarming in nature over time.

#2055849v1



51.     Following the widespread media attention surrounding Defendant's statements, Defendant has experienced a substantial increase in views, engagement, and monetization on her previously uploaded content.

52.     Many of Defendant's older videos and social media posts containing jokes or references to her divorce are now receiving renewed attention and significantly higher view counts.

#2055849v1



53.     Defendant is financially benefiting from this surge in traffic, including increased ad revenue, sponsorship engagement, and promotional opportunities, which were directly fueled by the publicity generated from her disclosures of personal, private information about Plaintiff.

54.     The renewed attention to Defendant's prior divorce-related content continues to perpetuate and recycle the private, sensitive information she disclosed about Plaintiff, further extending the reach and impact of the invasion of privacy.

55. After the release of the livestream, Defendant participated in an interview with Page Six in which she neither apologized for publicly disclosing Plaintiff's private sexual information nor corrected or dispelled the statements being circulated; instead, she remarked that it was "a shame" that this was what people chose to focus on, further validating the publication and minimizing the seriousness of the invasion of Plaintiff's privacy.



14

## FIRST CAUSE OF ACTION

## INVASION OF PRIVACY

56. Plaintiff alleges and incorporates by reference as through fully set forth herein, each and every allegation contained in paragraphs 1 through 55 of this complaint.

57. Defendant disclosed to the public at large highly intimate and private facts regarding Plaintiff's physical person and sexual life, including detailed statements about Plaintiff's genitalia and the parties' private marital relationship, during a livestream viewed by (and continuing to be viewed by) a large online audience.

58. The livestream was subsequently uploaded to YouTube, shared across multiple platforms, and republished by major media outlets repeatedly, including Fox News, TMZ, and LADBible, giving the statements national and international publicity.

59. The private facts disclosed by Defendant concerned Plaintiff's sexual anatomy, marital intimacy, and alleged causes of the divorce; matters quintessentially private and sensitive.

60. The statements publicized would be highly offensive and humiliating to a reasonable person.

61. The information disclosed was not newsworthy, not of legitimate public concern, and served only to sensationalize Plaintiff's private life for entertainment and to increase Defendant's personal exposure and financial gain.

62. Defendant's conduct has directly and proximately caused damage to Plaintiff in the form of pain and suffering, emotional distress, and reputational harm in excess of $75,000.

63. In addition to the compensatory damages and other relief demanded in this Complaint, Plaintiff intends to and reserves its right to, at an appropriate time, seek leave to amend his Complaint to add a claim for punitive damages pursuant to Minn. Stat. §§ 549.191 and 549.20.

## SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT

64. Plaintiff alleges and incorporates by reference as through fully set forth herein, each and every allegation contained in paragraphs 1 through 63 of this complaint.

65. Defendant received substantial financial benefit, increased viewership, increased engagement, and monetization through various social media platforms and media coverage that arose directly from her public disclosure of Plaintiff's private sexual information.

66. Defendant's previously uploaded videos, including content where she joked about her divorce, received increased traffic, views, engagement, and revenue as a result of her statements and the publicity she generated through the invasion of Plaintiff's privacy.

67. Defendant's enrichment is directly connected to her wrongful conduct and was obtained at Plaintiff's expense through the unauthorized disclosure of Plaintiff's private information.

68. It would be inequitable and unjust for Defendant to retain the financial and promotional benefits she received from her wrongful conduct.

69. Plaintiff is entitled to restitution damages equal to all monetary benefits that Defendant has received from her wrongful conduct, which, upon information and belief, are in excess of $75,000, and all other equitable relief the Court deems appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

A. For judgment in favor of Plaintiff and against Defendant on all causes of action asserted in the Complaint;

B. For an award of damages sufficient to compensate Plaintiff for the severe emotional distress, pain and suffering, reputational harm, and/or unjust enrichment damages caused by Plaintiff's conduct, the amount of which exceeds $75,000 and will be fully determined at trial.

C. In addition to the compensatory damages and other relief demanded in this Complaint, Plaintiff intends to and reserves its right to, at an appropriate time, seek leave to amend his Complaint to add a claim for punitive damages pursuant to Minn. Stat. §§ 549.191 and 549.20.

D. Reasonable attorneys' fees incurred in bringing this action to the full extent permitted by law or contract;

E.    For interest at the legal rate permitted by law; and

F.    For such other and further relief as the Court deems proper.

DATED: January 6, 2026          **BARNES & THORNBURG LLP**

By: *Christopher L. Lynch*
Christopher L. Lynch (0284154)
Anna Schendl (0505618)
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 333-2111
Facsimile: (612) 333-6798
christopher.lynch@btlaw.com

-And-

**ROSEN SABA LLP**

Ryan Saba (pro hac vice requested)
rsaba@rosensaba.com
Mike DiGiannantonio (pro hac vice requested)
mdigi@rosensaba.com
Giuliana Roisenzvit (pro hac vice requested)
GRoisenzvit@rosensaba.com
2301 Rosecrans Ave., Ste. 3180
El Segundo, California
Telephone: (310) 285-1727
Fax: (310) 285-1728

***Attorneys for Plaintiff Matthew Kalil***