UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Matthew Kalil, | Case No: 0:26-cv-00062 |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| Haley Kalil | |
| Defendant. | |

This matter came before the Court on April 29, 2026 on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Matthew J. Bialick, Esq., appeared on behalf of the Defendant. All other appearances are noted on the record.

The Court, having considered the Motion, the supporting and opposing memoranda, the pleadings, and those materials necessarily embraced by the pleadings—including the transcript of the November 4, 2025 interview—and being fully advised in the premises, hereby makes the following:

### FINDINGS OF UNDISPUTED FACT

1. Plaintiff Matthew Kalil is a former professional football player who earned public prominence playing for the Minnesota Vikings, Carolina Panthers, and Houston Texans.

2. Defendant Haley Kalil is a prominent model and social media entertainer with a global following exceeding 30 million subscribers and followers across TikTok, Instagram, and YouTube.

3. The parties were a high-profile couple who married in Minnesota in 2015 and remained in the public eye until their divorce was finalized in 2022.

4. On November 4, 2025, Defendant participated in a public livestream interview titled "I opened up to Haylee Baylee," which was filmed in Minnesota.

5. During the interview, Defendant provided a candid, autobiographical account of her past marriage and the specific physical circumstances that led to its dissolution.

6. Throughout the long-form interview, Defendant repeatedly praised the Plaintiff's character, describing him as "the greatest guy in the world," "the best dude," and "a really good guy". She characterized their seven-year union as exceptionally harmonious, noting they "never fought" and "never yelled at each other a single time".

7. Defendant shared that their deep emotional connection was hindered by a severe anatomical incompatibility that made sexual intercourse "impossible" and frequently left her "in tears".

8. To illustrate the extreme nature of this physical mismatch, Defendant estimated that the Plaintiff's genitalia placed him in the ".01 percent of the population" and described the size as comparable to "two coke [cans] stacked on top of each other," or "maybe even a third".

9. Defendant's narrative detailed the couple's efforts to overcome this barrier, which included consulting "therapists [and] doctors" and researching

        potential surgical interventions, such as "lipo type [procedures]".

10. Defendant clarified that the divorce was not a result of wrongdoing by either party, stating "neither of [them] did anything" wrong; rather, "just bad luck" and physical reality rendered the relationship unsustainable as a marriage.

11. Following the broadcast, the interview and the specific remarks regarding the parties' physical incompatibility generated widespread national and international media coverage from outlets including TMZ, Fox News, Page Six, and the New York Post.

12. Plaintiff currently resides in California.

13. Defendant currently resides in New York.

## CONCLUSIONS OF LAW

### I. THE LEGAL STANDARD UNDER RULE 12(B)(6)

1. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.

2. While the Court must accept factual allegations as true, it is not bound to accept legal conclusions couched as factual allegations.

3. In resolving a motion to dismiss, the Court may consider the pleadings and materials necessarily embraced by them, including the transcript of the November 4, 2025 interview.

### II. CHOICE OF LAW

4. Because this Court sits in Minnesota, Minnesota's choice-of-law rules

3

govern.

5. There is no actual conflict between the laws of Minnesota and California as applied to these facts because the elements, exceptions and defenses to the invasion of privacy and unjust enrichment causes of action are substantively similar in Minnesota and California.

6. Even if a conflict were assumed, the application of Minnesota law is constitutionally permissible given the parties' long-term residency in Minnesota and the fact that the challenged interview occurred in Minnesota.

7. The five "choice-influencing factors" favor Minnesota law, particularly the predictability of result, as the challenged speech occurred in Minnesota and concerned Minnesota-based events.

8. Accordingly, Minnesota law governs the dispute.

### III. FEDERAL DIVERSITY JURISDICTION AND UNSETTLED STATE LAW

9. A federal court sitting in diversity jurisdiction is tasked with predicting how the state's highest court would rule on a matter of substantive law.

10. In performing this task, the Court is strictly precluded from creating or extending state tort law beyond the contours expressly recognized by the state supreme court.

11. Diversity jurisdiction may not be utilized as a vehicle to obtain recognition of a sweeping new right that the Minnesota Supreme Court has not previously adopted.

## IV. INVASION OF PRIVACY CLAIM

### A. General Standards

12. Minnesota recognizes the tort of publication of private facts but applies it as a very narrow gap in tort law that must be strictly cabined to avoid chilling protected speech.

13. To prevail, a plaintiff must prove (1) publicity; (2) concerning the private life of another; (3) that would be highly offensive to a reasonable person; and (4) that is not of legitimate concern to the public.

14. If the speech at issue relates to a matter of legitimate public concern, the claim fails as a matter of law.

### B. Public Concern Analysis

15. Whether speech addresses a matter of public concern is a question of law determined by the totality of the circumstances, including its content, form, and context.

16. Speech deals with a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest.

17. The Court must evaluate the overall thrust and dominant theme of the communication as a whole, rather than focusing on discrete, isolated statements.

18. The arguably inappropriate or controversial character of a statement is irrelevant to the public concern inquiry.

**C.    Application to Defendant's Speech.**

19. Viewed in its entirety, the dominant theme of the Defendant's speech was a truthful, autobiographical account of the sexual trauma that led to the dissolution of a high-profile marriage.

20. The specific anatomical details and illustrative comparisons—regardless of their perceived offensiveness—were included to explore the broader, legitimate themes of sexual trauma, medical struggle, and physical incompatibility.

21. Because the Defendant was telling her own personal story, which inextricably involves the Plaintiff in an intimate way, the disclosure of the Plaintiff's involvement is a necessary incident to her exercise of First Amendment rights.

22. The Defendant's choice to speak via a public livestream and global social media platforms to an audience numbering in the millions reflects an intent to reach a broad public audience, which supports a public concern finding.

23. The speech connects to a wider social conversation regarding the realities underlying idealized celebrity unions and the emotional consequences of physical health issues.

24. The immediate and extensive media coverage by outlets such as TMZ and Fox News serves as a "good indication" of the public's legitimate interest in the subject matter.

25. Consequently, because the speech addresses a matter of legitimate public

6

concern, Plaintiff's invasion-of-privacy claim fails as a matter of law.

26. The romantic relationships of celebrities and public figures are inherently matters of public concern.

27. Plaintiff's status as a public figure does not fade regarding events that occurred during his professional NFL career and marriage, as no rule of repose exists to inhibit speech relating to the public life of a public figure.

28. Plaintiff's invasion-of-privacy claim fails as a matter of law.

## V. UNJUST ENRICHMENT CLAIM

### A. General Standards.

29. A claim for unjust enrichment requires a showing that the defendant received something of value to which they were not entitled, and that the defendant's conduct was not legally justifiable.

30. The doctrine applies only where the defendant's conduct is not legally justifiable.

31. Where a defendant acts pursuant to a constitutional right, the retention of any resulting benefit is justifiable and cannot be deemed unjust as a matter of law.

32. Unjust enrichment is an equitable remedy available only when there is no adequate remedy at law.

33. The availability of a legal remedy—regardless of its ultimate success in litigation—serves as an absolute bar to equitable relief.

34. A plaintiff must prove they affirmatively conferred a benefit upon the

defendant; merely being the subject of another's expressive work is insufficient.

**B.     Application to Unjust Enrichment Claim.**

35. The Defendant's speech is truthful and addresses a matter of legitimate public concern, making her conduct a protected exercise of First Amendment rights.

36. Defendant's speech was legally justifiable as being protected under the First Amendment.

37. Plaintiff never conferred a benefit on the Defendant.

38. Plaintiff had an adequate remedy at law which precludes the equitable claim.

39. Plaintiff's unjust enrichment claim fails as a matter of law.

## ORDER

**IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss is GRANTED.

2. Count I (Invasion of Privacy) is DISMISSED WITH PREJUDICE.

3. Count II (Unjust Enrichment) is DISMISSED WITH PREJUDICE.

4. Judgment shall be entered accordingly.

Dated:                                                          _____
                                                                United States District Judge